(No. 26310.—                    )

The People of the State of Illinois, Defendant in Error, *vs.* Frank E. Konkowski *et al.* Plaintiffs in Error.

*Opinion filed Nov. 18, 1941—Rehearing denied January 15, 1942.*

WALKER BUTLER, and DONALD E. BLODGETT, for plaintiffs in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and WILLIAM B. CRAWFORD, of counsel,) for the People.

Mr. JUSTICE GUNN delivered the opinion of the court:

Plaintiffs in error, Frank E. Konkowski and Stephen Idzikowski, were convicted by a jury in the criminal court of Cook county of conspiracy to cheat and defraud one Edward Rozek of certain money. They were each sentenced to the penitentiary, and the judgment of the criminal court was affirmed by the Appellate Court for the First District. The cause comes to this court on writ of error to the Appellate Court.

The evidence produced by the People tended to show that the defendants induced the complaining witness to believe that for the sum of $600 they could have him

placed on the eligible police list qualifying him for appointment on the police force of the city of Chicago. The defendant Konkowski, an attorney, was an alderman and ward committeeman. Idzikowski was a precinct captain. Application was made by Charles Rozek to Idzikowski, who was a friend of the family, to take the civil service examination for policeman. The testimony shows that Rozek was told that he would have no chance to pass the examination unless money was paid. On May 7, 1936, Idzikowski took Charles Rozek to Konkowski's office, talked to him out of the presence of Rozek and the next day came to the Rozek home where he was handed a wallet containing $600. Idzikowski then took Rozek to Konkowski's office, entered the private office, came out a few moments later with Konkowski and introduced him to Charles Rozek. Konkowski told him he would be a policeman. After this had occurred it was decided by the family that Edward Rozek was the one who should be a policeman instead of Charles, and this fact was communicated to Konkowski and agreed to by him. Evidence was also offered that at least six other persons paid one or the other of the defendants from $500 to $600, each, to be placed upon the eligible police list. This evidence was for the purpose of showing motive and course of conduct upon the part of the defendants.

In July, 1938, Edward Rozek testified he went to the office of Konkowski and asked him what was holding up the list, and he was told it would be up shortly. Konkowski was then asked "What donation did Steve Idzikowski give you?" and his reply was "How much was he supposed to?" and when told $600 he sent the complaining witness to Idzikowski requesting him to come immediately to the office. Konkowski and Idzikowski went into the inner office, and in about five minutes called the complaining witness and told him he had nothing to worry about, and that

everything was taken care of, and that his name was on the list, and later Idzikowski told him he would be one of the first 300.

In September, 1938, the list was published and Edward Rozek's name was not on it. He claims he made demand of Konkowski for a return of the money, and was told he would get it at the end of the week. On April 16, 1939, an emissary of Idzikowski by the name of Weidebusch, called upon the Rozek family and offered to return $500 if they would come down to court and cause the complaint to be dismissed. While at the Rozek home Weidebusch was arrested. He had in his possession $400 in currency which he turned over to one of the officers.

Both of the defendants took the witness stand and denied the truth of the facts set forth above. They admitted knowledge and acquaintance with the complaining witness and the several other persons who claimed they had paid money to get their names placed upon the eligible list. Evidence was also introduced by the defendants showing the reputation of both defendants for honesty and integrity was good. A fuller and more detailed statement of the facts may be found in the opinion of the Appellate Court. *People* v. *Konkowski*, 308 Ill. App. 470.

The first point made by the plaintiffs in error is that since the Statute of Limitations for conspiracy is eighteen months, and the $600 was received by plaintiffs in error on May 8, 1936, and the indictment returned on May 19, 1939, it was the duty of the court to discharge plaintiffs in error. The point was not raised at the time of the trial, but the question was raised for the first time on a motion for a new trial. Plaintiffs in error claim the unlawful object of the conspiracy was to obtain money by false pretenses. The indictment charged a "conspiracy to cheat and defraud." The question raised by this assignment of error is whether a conspiracy to cheat and defraud is the same as a conspiracy to obtain money by false pretenses. It is

claimed the offense of conspiring to obtain money by false pretenses is complete when the money of the victim is obtained, and the Statute of Limitations then begins to run, because thereafter nothing can be done in furtherance of the object which had already been accomplished.

Cheating is a different offense from that of false pretenses. Cheating is an offense at common law. (4 Blackstone, 157; 2 Hawkins Pleas of the Crown, chap. 23, sec. 1; 3 Greenleaf on Evidence, chap. 9.) Every conspiracy to do an unlawful act, or to do a lawful act for an illegal, fraudulent, or malicious purpose, or for a purpose which has a tendency to prejudice the public in general is, at common law, an indictable offense. (*People* v. *Amore,* 369 Ill. 245; *Smith* v. *People,* 25 id. 9; *People* v. *Curran,* 286 id. 302; *Chicago, Wilmington and Vermilion Coal Co.* v. *People,* 214 id. 421.) Under the law, in a conspiracy case every overt act is a renewal of the conspiracy, and the offense is continuous so long as overt acts in furtherance of its purpose are committed. (*People* v. *Drury,* 335 Ill. 539; *People* v. *Blumenberg,* 271 id. 180.) Where the charge is conspiracy the Statute of Limitations runs from the date of the commission of the last overt act in furtherance of the common design. *People* v. *Throop,* 359 Ill. 354; *People* v. *Drury, supra; People* v. *Walsh,* 322 Ill. 195.

Under the evidence in this case, in July, 1938, and within eighteen months of the return of the indictment, plaintiffs in error assured complaining witness he had nothing to worry about, and everything was taken care of, and his name was on the list. One of the means by which the complaining witness testified he was cheated out of his money was by the repeated assurances that his name would be upon the eligible police list, and there was evidence that this assurance was made within the eighteen-months' limitation, and substantially a repetition of the representation made in May, 1936. As was said in *People* v. *Drury, supra,* the conspiracy is renewed as to all

conspirators by each and every overt act. The claim of plaintiffs in error that the Statute of Limitations had run is not tenable.

It is also claimed that the trial court abused its discretion in refusing to keep the jury together during the trial upon the motion of the defendants and the concurrence therein of the State's attorney. It is only in capital cases that the trial court is without discretion as to keeping the jury together during the trial. In other cases there must be a showing that some injury would result from a refusal to keep the jury together. (*People* v. *Schneider*, 362 Ill. 478; *People* v. *Foster*, 288 id. 371.) In the present case there was no sufficient showing to deprive the court of its discretion in this matter. The only support to the motion of the defendants was the unsworn statement of their attorneys that there had been considerable publicity of a prejudicial nature. This is not sufficient to show an abuse of the trial court's discretion.

Plaintiffs in error also complain that the State's attorney used improper argument in his address to the jury. We have examined the record with care, and do not believe that the State's attorney exceeded the bounds of reasonable argument. Part of what he said was in answer to the argument of defendants' counsel. One of the objections is that the State's attorney asked certain witnesses to spell their names. Most of these witnesses had names of foreign origin. It appears there had been a former trial of defendants, and if for no other reason this was proper to enable the State's attorney to ascertain whether such witnesses were the same as those testifying in the former proceeding. Certain remarks were with respect to the assistant State's attorney attending school with one of the attorneys for the defendants, and with respect to one of the counsel leaving the court room after the evidence was in, but before the arguments were concluded. In each and all of these instances, where objections were made, the court

told counsel to confine themselves to the evidence, and clearly pointed out that the jury should only consider what was properly in evidence. We find nothing prejudicial in the remarks made by the State's attorney to the jury.

Complaint is also made that the trial court erred in refusing to sustain the challenge to the array of the petit jury by which plaintiffs in error were tried. The objection is that no women were included in the panel of jurors assigned to the criminal court of Cook county. The only showing made by plaintiffs in error was an unsworn motion signed by attorneys for defendants in which it was stated diligent search had been made of the record, and examination had been made of the roster of jurors assigned to the criminal court of Cook county, and there were not included in such record or roster the names of any women. There was nothing in the record to show what was done by the jury commissioners of Cook county, or whether the statutory requirements with respect to the selection of jurors had been complied with, and without such a showing it must be inferred that the commissioners followed the law.

In *People* v. *Hotchkiss*, 347 Ill. 217, where the challenge to the array was simply a motion by an attorney, but not sworn to or supported by affidavits or evidence, it was held the challenge could not be sustained because of the failure to make the proof in the manner required by law. In *People* v. *Stevens*, 335 Ill. 415, it was held that where a challenge to the array of jurors is made, the challenger must support it by affidavits or proof of the illegality of the panel. Clearly the showing in this case was insufficient.

Plaintiffs in error also object to the refusal of certain instructions tendered by them, and the giving of certain instructions upon behalf of the People. The court refused to give an instruction upon the subject of the testimony of an accomplice. Presumably it was offered upon the theory

that the complaining witness was an accomplice of the plaintiffs in error in a conspiracy to corrupt the Civil Service Commission into permitting him to become a policeman. There is however no such charge in the indictment, it being a conspiracy to "cheat and defraud" the complaining witness. The accepted test of whether a witness is an accomplice is whether he himself could have been indicted for the offense, either as principal or accessory. (*People* v. *Hrdlicka*, 344 Ill. 211.) Obviously Rozek could not be indicted for a conspiracy to cheat and defraud himself.

Refused instruction No. 7, as to what constitutes a conspiracy, was fully covered by instruction No. 15. Refused instruction No. 9 was a cautionary instruction to the effect that the judge was the sole judge of the law, and that it was the duty of the jury to follow the law as given to it by the court. It is within the discretion of the court to give or refuse a cautionary instruction where the jury is otherwise properly instructed. (*Chicago Union Traction Co.* v. *Goulding*, 228 Ill. 164; *Birmingham Fire Ins. Co.* v. *Pulver*, 126 id. 329.) The People's instruction No. 5 is objected to because it attempted to define a reasonable doubt. While the giving of such an instruction has been condemned by this court, yet it has been held not to be reversible error to give it, even in capital cases. (*People* v. *Birger*, 329 Ill. 352.) People's instructions Nos. 14 and 15 are not criticized as being inaccurate, but because they did not conform to the defendants' theory of the case. It is not necessary that the People assume that the defendants' theory is the correct one, as it has the right to offer instructions applicable to any evidence offered by either side.

The People's given instruction No. 19 is as follows: "The court instructs the jury, as a matter of law, that if two or more persons are engaged in the prosecution of an unlawful act, the acts of each in the prosecution of such unlawful act are binding upon all, and all are alike re-

sponsible for the acts of each in the prosecution of such *felony.*" It is criticized because the unlawful acts mentioned in said instruction are inadvertently referred to as a *felony.* We regard this objection as hyper-critical and certainly harmless.

Instruction No. 20 is objected to because it is claimed the language invades the province of the jury by assuming that the plaintiffs in error had become partners to an illegal transaction and had furthered the original plan. The instruction is not subject to this criticism. It is general in language and lays down the principle that all who take part in a conspiracy after it is formed, and who, with knowledge of the fact, concur in the plans originally formed and aid in executing them, are fellow conspirators. It is not claimed that this is not a correct statement of the law, and the last sentence, when read in connection with the defining part of a conspiracy, does not assume that the plaintiffs in error had entered into the original plan.

The instructions given the jury as a series fully and accurately set out the law applicable to the case, and no bad instructions affecting plaintiffs in error were included in the series. Upon writ of error to this court it is not a question of whether a record is perfect, but whether or not, from an inspection of the entire record, the defendants have had a fair trial and whether the conviction is based upon evidence establishing guilt beyond a reasonable doubt. Where it can be said, from the record, that an error complained of could not reasonably have affected the result, the judgment of the trial court should be affirmed. *People* v. *Cleminson,* 250 Ill. 135; *People* v. *Halpin,* 276 id. 363; *People* v. *Riley,* 376 id. 364.

We are satisfied that the defendants had a fair trial and that the evidence shows they are guilty beyond a reasonable doubt. The judgment of the Appellate court for the First District is affirmed.                         *Judgment affirmed.*