THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS CRISWELL, Defendant-Appellant.

(No. 56424;

First District (1st Division)—May 21, 1973.

Theodore A. Gottfried, of Defender Project, of Ottawa, (John L. Barton, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Robert C. Samko, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The defendant was charged with murder and with obstructing justice. The jury found him not guilty of murder but guilty of obstructing justice and he was sentenced to three years probation, the first year to be served in the House of Correction. He is presently free on bond pending the outcome of his appeal, which raises two issues:

(1) Whether the statute of limitations had run on the charge of obstructing justice; and

(2) Whether proper principles of sentencing require that he serve more time in jail as a condition of his probation.

We conclude that his first contention is well founded and therefore reverse without reaching the second.

On September 18, 1966, the defendant, after experiencing dizzy spells and a blackout, found his stepfather's body on the kitchen floor of their home, lying in a pool of blood, with a knife stuck in his chest. The defendant, afraid to call the police because suspicion would turn on him, threw away the knife, cleaned up the blood and concealed the body in the basement until the following night, when he buried it in the back yard of their home.

■■ In May of 1969, the defendant, who had just finished his basic training in the United States Army, related these facts to his chaplain and, on the latter's advice, told the same story to the Military Police. He was arrested and charged, on October 24, 1969, with the murder of his stepfather and with obstructing justice by knowingly concealing physical evidence of said murder.

A motion to dismiss the count charging the defendant with obstructing justice was made on the ground (conceded by the State) that said

charge was a misdemeanor on which the statute of limitations is one year and six months and that (not conceded) said statute started to run on September 19, 1966, the day the defendant buried his stepfather's body. The trial court denied the motion and the case went to trial with the results above indicated.

The first issue is, obviously, whether the one and a half year statute of limitations had run on the charge of obstructing justice by concealing physical evidence of the murder.

The defendant's contention is that the statute began to run on September 19, 1966, the night he performed his last act (viz: burying his stepfather's body) of obstructing justice in the case. On this basis the statute had run more than a year and a half before his indictment on this charge.

The State advances two theories in contending that the statute did not commence to run until the defendant had disclosed to the authorities that he had concealed evidence.

The first theory is set forth as follows in the State's brief:

> "The Criminal Code at article 3—8 provides that when an offense is based upon a series of acts that the period of limitations starts at the time when the last such act is committed. 'Act' is defined in Article 2—2 as including a failure or omission to take action. The defendant's intent to conceal the evidence; that is, the body of Robert Bourrell, coupled with his failure or omission to dig up the body and indicate to the authorities that evidence had been concealed, was a failure or omission to take action. These acts of Thomas Criswell continued to occur until the middle of May, 1969, when knowledge of the evidence came to the attention of the prosecuting authorities. Under Section 3—8 of Ch. 38, the limitations period would begin to run on the date the information of the concealment was received because prior to that time the defendant's failure to inform the authorities constituted continuing offense."

The statute (Ill. Rev. Stat. 1967, ch. 38, par. 31—4(a)) in pertinent parts, reads as follows:

> "31—4. § 31—4. Obstructing Justice. A person obstructs justic when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly commits any of the following acts:
>
> (a) Destroys, alters, conceals or disguises physical evidence, plants false evidence, furnishes false information; or
>
> \* \* \*
>
> Penalty.

A person convicted of obstructing justice shall be fined not to exceed $1,000 or imprisoned in a penal institution other than the penitentiary not to exceed one year or in the penitentiary from one to 3 years, or both fined and imprisoned."

■■ It should be noted that failures to dig up a body or to indicate to the authorities that evidence has been concealed are not defined as acts obstructing justice and probably could not constitutionally be made so in view of the fifth amendment to the Constitution of the United States. Hence the defendant's failure to inform the authorities does not and cannot constitute a "continuing offense".

The State cites no cases in support of this theory and we know of none precisely like the case at bar. We are therefore forced to seek somewhat analogous situations.

In *Grunewald v. United States*, 353 U.S. 391, 1 L.Ed.2d 931, 77 S.Ct. 963, the three petitioners were convicted in the Federal District Court of conspiring to defraud the United States by preventing the criminal prosecution of certain taxpayers for fraudulent tax evasion. They had succeeded in obtaining "no prosecution" rulings from the Bureau of Internal Revenue in 1948 and 1949 and their subsequent activities were directed at concealing the irregularities through which these rulings were obtained. They were not indicted until October 25, 1954, and the three year statute of limitations was pleaded as to certain counts.

In reversing and remanding, the Supreme Court, at pages 401—402, 403, 405 said:

"The crucial teaching of *Krulewitch and Lutwak* is that after the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment. As was there stated, allowing such a conspiracy to conceal to be inferred or implied from mere overt acts of concealment would result in a great widening of the scope of conspiracy prosecutions, since it would extend the life of a conspiracy indefinitely. Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators. For every conspiracy is by its very nature secret; a case can hardly be supposed where men concert together for crime and advertise their purpose to the world. And again, every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces. Sanctioning the

Government's theory would for all practical purposes wipe out the statute of limitations in conspiracy cases, as well as extend indefinitely the time within which hearsay declarations will bind co-conspirators.

\* \* \*

We find in all this nothing more than what was involved in *Krulewitch,* that is, (1) a criminal conspiracy which is carried out in secrecy; (2) a continuation of the secrecy after the accomplishment of the crime; and (3) desperate attempts to cover up after the crime begins to come to light; and so we cannot agree that this case does not fall within the ban of those prior opinions.

\* \* \*

\* \* \* We cannot accede to the proposition that the duration of a conspiracy can be indefinitely lengthened merely because the conspiracy is kept a secret, and merely because the conspirators take steps to bury their traces, in order to avoid detection and punishment after the central criminal purpose has been accomplished."

In *State v. Weiler,* (Mo. 1960), 338 S.W.2d 878, the debtor corporation's sole stockholder, who was also a director of the creditor, was charged with falsely representing to the creditor, in 1953, that the debtor was unable to pay, whereupon the creditor made no attempt to collect. The misrepresentation was not discovered until 1959, when the information was filed.

In affirming the trial court's order sustaining a plea of the three-year statute of limitations, the Supreme Court of Missouri, at page 881, said:

"\* \* \* the state in this case not only failed to plead any exception necessary to remove the bar of the statute of limitations, but it was affirmatively alleged both in the indictment and in the substitute information that the false and fraudulent representations were not discovered until August 3, 1959; thus presumably the state affirmatively set forth the only reason for the delay in the return of the indictment and the filing of the substitute information, a reason not constituting one of the exceptions provided in either Section 541.220 or Section 541.230, supra. Under those circumstances we find no reasonable basis for holding that the prosecution and trial were not barred by the 3-year statute of limitations; and no reason for a contrary view has been suggested by the state in its brief or reply brief."

The Illinois cases follow the same rule.

In *Weimer v. People,* 186 Ill. 503, 58 N.E. 378, the town supervisor was indicted for the embezzlement of town funds, during his term of

office. On the trial the three-year statute of limitation was raised and the proof tended to show that, if the defendant had embezzled funds, it had occurred more than three years before the indictment, the latter having been returned after he failed to turn certain town funds over to his successor. In reversing a conviction for the giving of an improper jury instruction stating, in substance, that the statute did not begin to run until his defalcations were discovered, our supreme court, at page 508, said:

> "This instruction was misleading and erroneous, for, as before shown, the statute began to run against any embezzlement or fraudulent conversion when it was committed, and not when it was discovered or made manifest by a failure to pay over on demand. * * *"

To the same effect on substantially the same facts, see: *Baschleben v. People*, 188 Ill. 261, 265, 58 N.E. 946; People v. Lee, 356 Ill. 294, 296-297, 190 N.E. 264; *People v. Barrett*, 405 Ill. 188, 194-195, 90 N.E.2d 94.

We therefore conclude that the State's contention—that the defendant's failure to dig up the body or to indicate the concealment to the authorities constituted a continuing series of acts which prevented the statute from running—is without merit.

■■ This brings us to the State's second theory, which is set forth as follows:

> "Further, it is the position of the State that the period of limitations was tolled during the period of concealment. The factual situation at bar is analogous to section 3—7(a) of the Criminal Code, that the defendant is not usually and publicly resident within this state. The basis for this argument rests in the rationale of the exception. If the legislature recognized that the state prosecutorial bodies are hindered in attempting to bring a defendant to justice when he secrets himself, it necessarily follows that when the commission of a crime is concealed the limitation period is tolled until discovery of the offense."

This flies in the face of the old Latin maxim *expressio unius exclusio alterius*, 2 Coke Upon Littleton, 210a. Illinois follows this rule of statutory construction. As our supreme court said in, *In re Estate of Leichtenberg*, 7 Ill.2d 545, 552, 131 N.E.2d 487,

> "* * * it is a fundamental rule of statutory construction that the enumeration of certain things in a statute implies the exclusion of all others. (*People ex rel. Hansen v. Collins*, 351 Ill. 551; *Tennant v. Epstein*, 356 Ill. 26.)"

This same view appears in *Savings Ass'n v. International Insurance Co.*, 17 Ill.2d 609, 162 N.E.2d 345, where the court said, at page 612:

"A familiar principle of statutory construction is that the expression of one thing in an enactment excludes any other, even though there be no negative words prohibiting it. (*National Home Building and Loan Ass'n v. Home Savings Bank*, 181 Ill. 35; *Swick v. Coleman*, 218 Ill. 33.) * * *."

In *Morgan v. People*, 16 Ill.2d 374, 158 N.E.2d 24, the Illinois Supreme Court applied this to an exception to a statute of limitation when it said, at page 379, that:

"* * * It is the established rule that exceptions to a statute of limitations will not be implied and if the legislature has not seen fit to except a class of persons from the operation of a statute, courts will not assume the right to do so. (30 Am. Jur., Limitation of Actions, sec. 186, p. 150.) * * *."

In *Peach v. Peach*, 73 Ill.App.2d 72, 218 N.E.2d 504, the appellate court, through Mr. Justice Davis, at page 82, said:

"The legislature has limited the exception in the statute of limitations to those who are 'insane or mentally ill' as those words are variously defined. It has not seen fit to extend the exceptions to a class of persons who, though not insane or mentally ill, do not possess the mental capabilities expected of or common to persons of their age. No such exception may be implied or created by the courts. Morgan v. The People, 16 Ill.2d 374, 379, 158 N.E.2d 24 (1959)."

Applying this rule, the State's alternative theory also fails and the conclusion that the statute of limitations had run before the defendant was indicted is inescapable.

We, therefore reverse the judgment on this ground and do not reach the question of a proper sentence.

Judgment reversed.

BURKE, P. J., and EGAN, J., concur.