THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICHARD MUSIAL, Defendant-Appellant.

First District (5th Division) No. 78-599

Opinion filed November 21, 1980.—Rehearing denied December 24, 1980.

Ralph Ruebner and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Adrienne Noble Nacev, and Ann L. Benedek, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted of criminal damage to property and two counts of attempt murder. He was sentenced to terms of 8 to 15 years on each attempt murder and one to three years for criminal damage to property—all to run concurrently. On appeal, he contends that (1) the trial court improperly refused to allow impeachment of a prosecution occurrence witness with a prior burglary conviction; (2) the sentences imposed and defendant's election of the law under which he was sentenced were influenced by the court's misunderstanding of the permissible minimum term; (3) the 8- to 15-year sentences for attempt murder were improper, since the legislature intended to classify attempt murder as a Class 4 rather than a Class 1 felony; and (4) the court failed to give sufficient consideration to mitigating factors in fashioning the 8- to 15-year sentences.

The record discloses that defendant and a friend (Michael Jarvis) were drinking in a bar when defendant became involved in a verbal altercation with Richard Rizzo concerning a woman named Chico. They went outside, apparently to settle the dispute, and it appears that Rizzo struck both defendant and Jarvis. A number of witnesses gave testimony as to subsequent events.

Bernadette Busching, a bartender in the tavern, testified that she saw Rizzo strike defendant outside the tavern but, with the help of Jody Bezdek, she was able to persuade Rizzo to return to the bar where he had another drink and then left; that she followed him across the street, where she saw him break a window of an automobile and try to reach defendant, who was seated behind the wheel of the car which was in front of a bicycle shop; that defendant started the car and drove about a half block away where he made a U-turn, came back, and then drove the car into a group of people in front of the shop—after which she saw James Coates lying on the ground; that the car left but was driven back, and she saw it roll over Coates and then crash into the bicycle shop; and that, when defendant got out of the auto, he said "[s]omething to the effect like, 'he was so much bigger than I am that I had to use something.' "

Thannius Worna was in the bar and, when told there was a fight outside, he left the bar and observed a group of people in front of the bicycle shop across the street; that punches were thrown and a man was knocked down, after which he saw a man get into an auto, drive about 40 feet east down the street, make a U-turn, and then drive directly into the people; that someone bounced off the front of a car and fell in front of it; and that the car was driven off but came back a second time and crashed through the window of the shop.

Leroy Cavelle testified that he was standing outside of a nearby bar where he worked; that he heard shouting and saw an auto backing away from the bicycle shop where the window appeared to have been broken; that the auto went east, made a U-turn, and then drove completely inside the shop; and that he ran across the street and saw Coates lying on the ground in front of the shop. During Cavelle's testimony, the defense attempted to impeach him with an 11-year-old burglary conviction, and the court granted the State's motion to prohibit its introduction of evidence thereof, citing the 10-year rule of *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695. The trial court stated, however, that if Cavelle's credibility became an issue during the trial, it would reconsider that ruling.

Michael Jarvis testified that he and defendant left the bar after it closed and crossed the street to defendant's car when Rizzo called defendant a loud mouth and demanded that he stop "fooling around" with Chico, whom Rizzo said was the wife of a friend; that when defendant said he did not know Chico was married, Rizzo struck Jarvis and then defendant; that Jarvis tried to get into his car but Rizzo pulled him out, knocked him to the ground, and kicked him five or six times; that he managed to get away and then saw that Rizzo was trying to drag defendant out of the car; that he had gone around the building in search of a weapon when he heard a crash and saw Rizzo standing outside the shop with blood on his face and defendant with blood running from his nose.

James Coates testified that when he left the bar at the request of Bernadette Busching, he observed a group of people by an automobile parked in front of the bicycle shop across the street; that he joined the group and saw an unknown man lying on the ground; that although everyone was urging Rizzo to calm down, he went to the automobile and tried to open the passenger door; that the car sped off, made a U-turn after going about 40 feet and started back; that his attention then had been directed elsewhere, and he was struck by the car and lost consciousness; that when he awoke he was at the base of the picture window of the bicycle shop; that he had blood on his body and couldn't move his legs; that he then saw a car coming towards him but was unable to move and he again lost consciousness; and that when he awoke, he saw that the car had gone through the window of the bicycle shop.

As a result of the occurrence, Coates was so severely injured that at the time of the trial he was still unable to walk.

Defendant testified that he had talked with Chico but had had no conversation with Rizzo prior to leaving the bar; that as defendant and Jarvis crossed the street, he called them back, told defendant that he had a big mouth and had been "fooling around" with someone else's wife; that when Jarvis stated he did not know Chico was married, Rizzo struck

Jarvis and then hit defendant; that Rizzo returned to the bar and he and Jarvis crossed the street where he entered his car, but as Jarvis was getting in, Rizzo appeared, pulled him out, and began beating him; that he (defendant) started the car, put it in low gear, floored it, and proceeded to drive the car directly at Rizzo; that he just "braised" Rizzo with the right side of the car, causing him to fly through the window and the front of his car to enter the building; that when Rizzo came at him again, he backed the car up about 10 feet, aimed the car at Rizzo again, proceeded forward as fast as he could but missed Rizzo and went completely into the building; and that he did not know Coates had been injured until afterwards.

Defendant admitted that he had intended to kill Rizzo out of fear for his life and that of Jarvis, but stated that he had not intended to injure Coates or to damage the bicycle shop.

In addition to its verdicts of guilty on the attempt murders and criminal damage to property, the jury also found defendant guilty of two counts of aggravated battery, but no sentence was imposed thereon as the court found them to be merged with the attempt murders as lesser included offenses. The court informed defendant that he could elect to be sentenced either under the statute in effect in 1976, when the offenses were committed—in which event a 4-year minimum sentence must be imposed for attempt murder as a Class 1 felony; or he could elect under the 1978 law—in which attempt murder was a Class X felony carrying a sentence of not less than six nor more than 30 years.

Defendant elected to be sentenced under the older statute and, after arguments in aggravation and mitigation, the sentences above set forth were imposed with the trial court stating that it was required to "go over and evaluate at least 20 different areas in regard to mitigation and aggravation that are set out under the new law and I assure you, * * *, that I have gone over all the elements of mitigation and all those elements of aggravation."

OPINION

■■ Defendant first contends that the refusal to permit him to impeach the testimony of Cavelle with the prior burglary conviction abridged his right of confrontation. In this regard, we note in order to impeach the testimony of a witness with evidence of prior criminal conduct, it is the rule that convictions for crimes punishable by sentences in excess of one year imprisonment or involving dishonesty or false statement are admissible, but only if the trial court determines that their probative value outweighs the possibility of unfair prejudice and, further, only if the conviction or release of the witness (whichever occurred later) was less than 10 years prior to the giving of testimony. (*People v. Montgomery*;

*People v. Brown* (1978), 61 Ill. App. 3d 180, 377 N.E.2d 1201.) That rule is directory, rather than mandatory, and its application requires " '* * * the operation of a sound judicial discretion * * *' " in light of the circumstances that develop at trial. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 517, 268 N.E.2d 695, 699.) Thus, where the trial court has sufficient basis with reference to the above stated criteria, it may be determined that in the interest of fairness and effective trial administration proper grounds exist for impeachment. Additionally, the responsibility of presenting evidence of conviction proper to impeach rests with the party seeking impeachment. *People v. Yost* (1980), 78 Ill. 2d 292, 399 N.E.2d 1283.

In the case before us, the record discloses that the defense failed to meet its burden to present evidence that the conviction or release of Cavelle took place within 10 years of the time he testified. In any event, Cavelle's testimony was not crucial in establishing defendant's guilt, as it was cumulative of the testimony of other prosecution occurrence witnesses. Coates, Worna, and Busching all testified generally that defendant drove his auto away from the bicycle shop in an easterly direction, made a U-turn, and then drove directly into the crowd gathered in front of the shop—crashing through the shop's plate glass window and, in the process, striking both Coates and Rizzo. Cavelle's testimony that he saw an auto head east, make a U-turn, and then drive completely inside the shop largely substantiates the testimony of those other witnesses. We also note that the trial court stated that it would reconsider its ruling on the admissibility of Cavelle's conviction should his credibility become an issue, and the fact that no motion was made thereafter to reconsider indicates that the trial counsel did not believe it to be of any great significance. In any event, in view of the consistency in the testimony of the occurrence witnesses, including that of Cavelle, and because defendant was otherwise afforded every opportunity to test the veracity of Cavelle's testimony on cross-examination (see *United States v. Infelice* (7th Cir. 1974), 506 F.2d 1358; also see *Pointer v. Texas* (1965), 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065), it cannot be said that the trial court mechanically applied the rules of evidence so as to infringe upon defendant's right of confrontation (see *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 97 S. Ct. 1105). We conclude, therefore, in the light of the circumstances that unfolded at trial, that the trial court achieved a proper balance in finding inadmissible the evidence of Cavelle's prior conviction.

■■ Defendant next asserts that the trial court's misunderstanding of the minimum sentence permissible for attempt murder under the statute in effect at the time of the alleged offenses improperly influenced defendant's election. Section 8—4(c) of the Criminal Code of 1961 provided that:

"A person convicted of an attempt may be fined or imprisoned

or both not to exceed the maximum provided for the offense attempted but, * * *.

(1) the sentence for attempt to commit murder shall not exceed the sentence for a Class 1 felony; * * *." (Ill. Rev. Stat. 1973, ch. 38, par. 8—4(c).)

In 1976, at the time of the offenses here, the maximum term for a Class 1 felony was "any term in excess of four years." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)(2).) In the instant case, the trial court stated at the time of sentencing that:

"At the time this offense of attempted murder was committed under the old law, attempted murder was a Class 1 felony for which you must be sentenced by the Court to a minimum term of four years in the Illinois State Penitentiary, to any term of years as a maximum that the Court feels is appropriate."

There is no dispute that the trial court misinterpreted the statute as requiring a 4-year minimum sentence, but it is well established that a trial court's misapprehension as to the minimum sentence for attempt murder necessitates reconsideration only when it "arguably influenced the sentencing decision." *People v. Eddington* (1979), 77 Ill. 2d 41, 48, 394 N.E.2d 1185, 1188.

Decisional law negates defendant's position, for in those cases in which a defendant's sentence for attempt murder was remanded for reconsideration because the trial court misconstrued the minimum permissible term, the minimum that the court had imposed was four years or a few years more. (*People v. Moore* (1978), 69 Ill. 2d 520, 372 N.E.2d 666; *People v. Woods* (1978), 62 Ill. App. 3d 381, 378 N.E.2d 1271; *People v. Brooks* (1977), 50 Ill. App. 3d 4, 364 N.E.2d 994; *People v. Athey* (1976), 43 Ill. App. 3d 261, 356 N.E.2d 1332.) We note in particular that in *Brooks*, which was decided prior to *Eddington*, the court determined from the record that the trial judge had mistakenly relied on the 4-year minimum as a reference point in fashioning the sentence. In the instant case, however, despite the trial judge's misstatement of the sentencing law, the record discloses no indication that the 4-year minimum served as a reference point. The minimum was set at eight years for each conviction; there were aggravating circumstances to consider, including the seriousness of the crime and the extent of permanent injury suffered by James Coates; and the record is silent as to how, if at all, the court's misstatement of the law affected the decision. See *People v. Eddington*; *People v. Connor* (1980), 82 Ill. App. 3d 652, 402 N.E.2d 862; *People v. Daily* (1979), 79 Ill. App. 3d 928, 398 N.E.2d 923. Also see *People v. MacRae* (1979), 78 Ill. App. 3d 266, 397 N.E.2d 509.

■■ Defendant also fails to show how the trial court's misunderstanding

influenced defendant's election of sentencing acts. In any event, when a trial judge undertakes to explain prior and current sentencing provisions to a defendant before defendant makes an election, "all that is required * * * is that the trial judge advise a defendant of his right to election. The burden is not for the court but for counsel to explain and suggest what appears to be the best choice." *People v. Warfel* (1979), 67 Ill. App. 3d 620, 627, 385 N.E.2d 175, 180; also see *People v. Daily*; *People v. Dozier* (1979), 67 Ill. App. 3d 611, 615, 385 N.E.2d 155, 158.

Defendant also asserts that since attempt murder is unclassified among felonies, it should be considered a Class 4 felony, which carried a sentence ranging from 1 to 3 years under sections 5—5—2(a) and 5—8—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, pars. 1005—5—2(a) and 1005—8—1). We note, however, that this position was rejected in *People v. Calvert* (1980), 82 Ill. App. 3d 350, 402 N.E.2d 638, and, in addition, defendant rests it on a misreading of *People v. Moore*. While *Moore* stands for the proposition that the sentence for attempt murder cannot exceed that for Class 1 felonies, we see nothing either in *Moore* or in the statutory language which leads us to the conclusion that defendant apparently discerns. We think it would be anomalous for any court to hold that attempt murder should be downgraded by three categories with a commensurate reduction in the sentencing range simply because the prohibited act is not completed. Defendant's contention is, therefore, without support in law or logic.

■■ Finally, we do not agree with the contention of defendant that the trial court gave insufficient consideration to mitigating factors and thereby imposed an excessively harsh sentence. The applicable standard for consideration of factors in aggravation and mitigation was stated in *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884:

> "[T]he trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight. We therefore reaffirm our long-standing rule that absent an abuse of discretion by the trial court a sentence may not be altered on review."

That principle was further validated in *People v. Lykins* (1979), 77 Ill. 2d 35, 394 N.E.2d 1182. (Also see *People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161; *People v. Fabian* (1976), 42 Ill. App. 3d 934, 356 N.E.2d 982.) The record in the case at bar does not disclose that the trial court abused its discretion in imposing sentence. The trial judge stated that he had "gone over all those elements of mitigation and all those elements of aggravation" before sentencing defendant. The court also stated that consideration was given to the gravity of the offense, to societal interests protected by discouraging such acts and to defendant's lack of a prior

criminal record. Although defendant claimed to be acting in self-defense, the record indicates that he employed excessive force, particularly in view of the permanent incapacitation of James Coates. (*Cf. People v. Mayhone* (1970), 124 Ill. App. 2d 369, 260 N.E.2d 451.) It appears to us that the trial court conscientiously balanced both aggravating and mitigating factors, and we conclude that it did not abuse its discretion in the sentencing.

For the reasons stated, the judgments are affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.