THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* DOROTHY EDWARDS, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* GREG LANGE, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* DAWN LANGE, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAWN LANGE, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GREGORY LANGE, Defendant-Appellant.

Fourth District    Nos. 17021, 17022, 17023, 17226, 17227 cons.

Opinion filed April 21, 1982.

Michael M. McFatridge, State's Attorney, of Paris (Robert J. Biderman and Garry W. Bryan, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

John P. O'Rourke, of Dukes, O'Rourke, Stewart, Martin & Helm, Ltd., of Danville, for appellees Gregory Lange and Dawn Lange.

Daniel D. Yuhas and Diane N. Cherry, both of State Appellate Defender's Office, of Springfield, and Mike Southworth, law student, for appellee Dorothy Edwards.

JUSTICE LONDRIGAN delivered the opinion of the court:

I

In January and February 1981 the State charged the three defendants here, Dorothy Edwards, Greg Lange, and Dawn Lange, and a fourth person, Brandon Edwards, with firing a shotgun at a man June 15, 1977, and with other offenses related to the shooting. The State pleaded several exceptions to the statute of limitations; the trial court ruled that Brandon Edwards was amenable to prosecution but dismissed the charges against the others as barred by the three-year statute of limitations for felonies. All three defendants here were charged with attempted murder, conspiracy to commit murder, aiding a fugitive, and conspiracy to obstruct justice. In addition to these offenses Greg Lange and Dawn Lange were charged with solicitation to commit murder. The State appeals the dismissal of the charges in causes Nos. 17021, 17022, and 17023.

A

The State first argues that the statute of limitations does not bar prosecuting the defendants for attempted murder because that offense was neither a felony nor a misdemeanor in 1977 and, alternatively, that attempted murder should be treated like murder, which may be prosecuted at any time.

Section 3—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 3—5) provides general rules regarding limitations and said:

"(a) A prosecution for murder, manslaughter, treason, arson, or forgery may be commenced at any time.

(b) Unless the statute describing the offense provides otherwise, or the period of limitation is extended by Section 3—6, a prosecution for any offense not designated in Subsection (a) must be commenced within three years after the commission of the offense if it is a felony, or within one year and six months after its commission if it is a misdemeanor."

The State argues that in 1977 attempted murder was an anomaly, neither a felony nor a misdemeanor, and therefore not governed by section 3—5(b). Section 8—4(c)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 8—4(c)(1)) said that "the sentence for attempt to commit murder shall not exceed the sentence for a Class 1 felony"; at that time the maximum term of imprisonment for a Class 1 felony was "any term in excess of four years" and the minimum was four years (Ill. Rev. Stat. 1977, ch. 38, pars. 1005—8—1(b)(2), (c)(2)). But the language used in section 8—4(c)(1)—"shall not exceed"—meant that attempted murder had no minimum sentence. (*People v. Moore* (1978), 69 Ill. 2d 520, 522-23, 372 N.E.2d 666, 668.) Public Act 80-1099, effective February 1, 1978, changed section 8—4(c)(1) to say that "the sentence for attempt to commit murder shall not exceed the sentence for a Class X felony" (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 8—4(c)(1)), and Public Act 81-923, effective January 1, 1980, substituted "is" for "shall not exceed" in section 8—4(c)(1) (Ill. Rev. Stat. 1979, ch. 38, par. 8—4(c)(1)), making explicit the classification of attempted murder. The phrase "shall not exceed" is the cause of the confusion here. The case must be decided under the statute in effect when the offense allegedly occurred. The election in section 8—2—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1008—2—4(b)) applies only to changes made by Public Act 80-1099. See *People v. Peoples* (1979), 71 Ill. App. 3d 842, 390 N.E.2d 554.

The State points to the definitions of "felony" and "misdemeanor" to show that without a minimum sentence attempted murder was unclassified. A felony is "an offense for which a sentence to death or to a term of imprisonment in a penitentiary for one year or more is provided," and a misdemeanor is "any offense for which a sentence to a term of imprisonment in other than a penitentiary for less than one year may be imposed." (Ill. Rev. Stat. 1977, ch. 38, pars. 2—7, 2—11.) The State concludes from *Moore* and the definitions of "felony" and "misdemeanor" that in 1977 the classification of attempted murder depended on the sentence imposed in the particular case; classification of an offense, the State believes, must be apparent at the outset of the prosecution to determine whether the statute of limitations is a bar; when the classification of an offense is not imme-

diately ascertainable, the time periods specified in section 3—5(b) cannot be used.

■■ This argument fails for several reasons. *Moore* should not be read as saying that attempted murder was neither a felony nor a misdemeanor; that case held only that no minimum sentence was prescribed for the offense. Indeed, attempted murder fit the statutory definition of "felony," for section 8—4(c)(1) provided a term of imprisonment "for one year or more"—a person convicted of attempted murder could be sentenced to the same sentence as one convicted of a Class 1 felony, namely "any term in excess of four years." Because attempted murder had no minimum term, the result of the State's argument is that sentencing a person convicted of that offense to one day in jail would transform the crime into a misdemeanor. An offense is a felony when more than a year in prison "is provided" as the sentence; we read this phrase as referring to the maximum prison term provided by the statute rather than the minimum possible sentence, if any, or the sentence actually imposed. Therefore, at the time in question attempted murder was classifiable as a felony.

In *People v. Musial* (1980), 90 Ill. App. 3d 930, 414 N.E.2d 61, and *People v. Calvert* (1980), 82 Ill. App. 3d 350, 402 N.E.2d 638, the defendants argued that attempted murder was a Class 4 felony under the rules regarding unclassified offenses. Section 5—5—2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—5—2(a)) provided:

> "The particular classification of each felony is specified in the law defining the felony. Any unclassified offense which is declared by law to be a felony or which provides a sentence to a term of imprisonment for one year or more shall be a Class 4 felony."

In rejecting the defendant's argument *Musial* said:

> "While *Moore* stands for the proposition that the sentence for attempt murder cannot exceed that for Class 1 felonies, we see nothing either in *Moore* or in the statutory language which leads us to the conclusion that defendant apparently discerns. We think it would be anomalous for any court to hold that attempt murder should be downgraded by three categories with a commensurate reduction in the sentencing range simply because the prohibited act is not completed. Defendant's contention is, therefore, without support in law or logic." (90 Ill. App. 3d 930, 936, 414 N.E.2d 61, 66.)

*Calvert* reached the same result. To have downgraded attempted murder to a Class 4 felony would have nullified the provision for a sentence equal to that of a Class 1 felony.

■■ We conclude that attempted murder was a felony and therefore governed by the three-year limitations period in section 3—5(b).

■■ The State also argues that attempted murder is so similar to murder that it should be governed by section 3—5(a) and not by section 3—5(b). Section 3—5(a) is precise and unambiguous, specifying the offenses that may be prosecuted at any time, murder, manslaughter, treason, arson, and forgery. Although in certain cases the only difference between murder and attempted murder may be whether the victim dies, they are distinct offenses and include different elements: like all attempts, attempted murder requires proof of specific intent. The legislature chose not to include attempted murder or any other inchoate offense in section 3—5(a), and we see no reason to undo this choice by interpretation. The State's argument in this regard is also vitiated by the inclusion of manslaughter, a lesser included offense of murder, in section 3—5(a); this signifies that the legislature did not believe that specifying murder alone implicitly included manslaughter within its meaning.

## B

The trial court ruled that Brandon Edwards, the fourth person charged in connection with the 1977 shooting, was amenable to prosecution because of the length of time he was absent from Illinois (Ill. Rev. Stat. 1977, ch. 38, par. 3—7(a)). The State argues that the three defendants here are accountable for Brandon Edwards' acts and therefore may be prosecuted now. The State applies this argument with respect to the charges of attempted murder, conspiracy to commit murder, aiding a fugitive, and conspiracy to obstruct justice.

The periods of limitations in section 3—5(b) govern except when "the statute describing the offense provides otherwise, or the period of limitation is extended by Section 3—6 * * *." Section 3—6 extends the general limitations periods for several types of offenses. (Ill. Rev. Stat. 1977, ch. 38, par. 3—6.) Section 3—7, which the trial court applied to Brandon Edwards, tolls the limitations clock in several instances. We see no reason to hold the defendants accountable for Brandon Edwards' absence from Illinois; the State has not proved that they too were absent for a sufficiently lengthy period of time, and nothing in the accountability provisions (Ill. Rev. Stat. 1977, ch. 38, par. 5—1 et seq.) makes them responsible for his absence.

The State relies mainly on *Bompensiero v. Superior Court* (1955), 44 Cal. 2d 178, 281 P.2d 250, which rejected Bompensiero's petition challenging a trial court's jurisdiction to try him. The indictment against Bompensiero alleged that he had sought and obtained bribes in behalf of a public official. One of the counts in the indictment alleged the acceptance of a bribe about 3½ years earlier; California law provided a three-year limitations period for most felonies and a special six-year period for the offense of accepting a bribe by a public official or employee. Bompen-

siero argued that because he was neither a public official nor a public employee the six-year period did not apply to him.

■■ The court held that Bompensiero was subject to the six-year period because by statute he was liable for the offense as a principal. This result is based on an application of accountability law to the particular offense allegedly committed by the principal; the offense itself constituted an exception to the general limitations period. In this case, all the offenses are felonies and they all fall within the general three-year limitations period; only because Brandon Edwards was outside the State for a certain period of time following his alleged participation in the offense may the State now prosecute him. An accomplice is liable for conduct that is an element of an offense (Ill. Rev. Stat. 1977, ch. 38, par. 5—1), but Brandon Edwards' absence does not constitute an offense. Whether an accomplice may receive the same sentence as his principal depends on the terms of the particular sentencing statute (compare *People v. Tibbs* (1981), 103 Ill. App. 3d 73, 430 N.E.2d 681, with *People v. Sangster* (1981), 95 Ill. App. 3d 357, 420 N.E.2d 181, *appeal allowed* (1981), 85 Ill. 2d 572). Neither the express nor the implied terms of section 3—7 suggest that that provision applies to the accomplices of someone whose acts have tolled the statute of limitations with respect to his own prosecution.

## C

As another way of avoiding the statute of limitations the State argues that conspiracy to commit murder, aiding a fugitive, and conspiracy to obstruct justice were continuing offenses and that acts supporting these charges occurred within three years of January and February 1981, when the charges were filed. Each of the three defendants was charged with these offenses. The statutory rule on continuing offenses says:

> "When an offense is based on a series of acts performed at different times, the period of limitation prescribed by this Article starts at the time when the last such act is committed." (Ill. Rev. Stat. 1977, ch. 38, par. 3—8.)

The only acts mentioned by the State at trial and on appeal are visits among the defendants during 1979.

The trial judge rejected the State's theory, ruling that these visits were not sufficient to show that the offenses had continued. On review we must assume that the defendants visited each other. The trial judge was correct, however, in his decision.

■■ ■ Conspiracies are not completed until the commission of the last overt act done to further the underlying offense; every act in furtherance of the scheme renews the conspiracy. (*People v. Konkowski* (1941), 378 Ill. 616, 39 N.E.2d 13; *People v. Levinson* (1979), 75 Ill. App. 3d 429, 394

N.E.2d 509.) The conspiracy to commit murder ended when the last shot was fired at the intended victim; the visits did not revive this conspiracy, for there is no evidence that the defendants planned to try again to kill the victim. Aiding a fugitive and conspiracy to obstruct justice also were not furthered by the visits. In *People v. Criswell* (1973), 12 Ill. App. 3d 102, 298 N.E.2d 391, the court reversed the defendant's conviction for obstructing justice. On September 18, 1966, Criswell arrived home and discovered his stepfather's dead body with a knife sticking out of it. The defendant got rid of the knife, cleaned up the blood, and put the body in the basement; the next day he buried the body in the backyard. Criswell was charged with murder and with obstructing justice, a misdemeanor, October 24, 1969; he was acquitted of murder. After quoting the definition of "obstructing justice" the court said:

> "It should be noted that failures to dig up a body or to indicate to the authorities that evidence has been concealed are not defined as acts obstructing justice and probably could not constitutionally be made so in view of the fifth amendment to the Constitution of the United States. Hence the defendant's failure to inform the authorities does not and cannot constitute a 'continuing offense'." (12 Ill. App. 3d 102, 105, 298 N.E.2d 391, 393.)

Each of the defendants here was charged with aiding a fugitive for not telling the police that the others had participated in the crime (Ill. Rev. Stat. 1979, ch. 38, par. 31—5). By revealing that information, though, each would have implicated himself. Family visits alone, therefore, do not operate to continue an offense or to further a conspiracy. We therefore affirm the trial court's dismissal of the charges in causes Nos. 17021, 17022, and 17023.

## II

In causes Nos. 17226 and 17227 Greg Lange and Dawn Lange appeal an order by the trial court concerning their bail bonds. After the charges were filed in this case they each were released on bonds of $100,000, which required them to deposit $10,000 with the clerk of the circuit court (Ill. Rev. Stat. 1979, ch. 38, par. 110—7(a)). When the charges against the Langes were dismissed the State asked that bond be set pending its intended appeal. The court reduced the bonds to $10,000 and said that the Langes were entitled to refunds representing the reductions; the precise amounts to be refunded to them were to be decided later. From their original deposits of $10,000, each received a refund of $8,000: the clerk retained $1,000 as costs (Ill. Rev. Stat. 1979, ch. 38, par. 110—7(f)) and $1,000 as 10 percent of the appeal bond. The Langes then moved for a return of their entire bonds, and in a letter to counsel denying the motions

the court explained that the appeal bonds represented new bonds rather than continuations of the appearance bonds. The Langes filed a notice of appeal within 30 days of this.

■■ The Langes argue that because the original bonds were intended to continue in force, although at reduced amounts, the clerk had no authority to assess costs against the amounts of the original bonds and alternatively that the circuit court abused its discretion in not ordering the clerk to return a greater percentage of the bail bonds. The State argues that the trial court's denial of the motions concerning bail is not a final, appealable order and points out that the Langes' motions were not made or decided until after the State had already appealed the dismissal of the charges.

Supreme Court Rule 604(c)(1) (73 Ill. 2d R. 604(c)(1)) says in part:

> "Before conviction a defendant may appeal to the Appellate Court from an order setting, modifying, revoking, denying, or refusing to modify bail or the conditions thereof."

Section 110—7(e) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 110—7(e)) says:

> "After the entry of an order by the trial court allowing or denying bail pending appeal either party may apply to the reviewing court having jurisdiction or to a justice thereof sitting in vacation for an order increasing or decreasing the amount of bail or allowing or denying bail pending appeal."

The State argues that these provisions are inapplicable to appeals concerning retention of bail bond costs. We find nothing in the provisions, however, that precludes a review of the question. This dispute concerns the interpretation of the appeal bonds and the relationship, if any, between those bonds and the appearance bonds. The State did not prematurely appeal the dismissal of the charges because those orders were interlocutory and appealable under Rule 604(a)(1) (73 Ill. 2d R. 604(a)(1)).

■■ The trial court's decision that "compelling reasons" existed to require the Langes to post bonds pending the State's appeal (73 Ill. 2d R. 604(a)(3)) was not an abuse of discretion. The appeal bonds are better viewed, however, as reductions in the Langes' original bail bonds than as new and distinct bonds. The trial judge's statements regarding this are contradictory; we choose to follow his original indication that the bonds were being continued but reduced. Throughout these proceedings the Langes have been subject to bonds, and we see no reason for the trial court to terminate a bond and immediately impose a fresh one. The retention of fees was thus premature, for only "[w]hen the conditions of the bail bond have been performed and the accused has been discharged from all obligations in the cause" may fees be retained (Ill. Rev. Stat. 1979, ch. 38, par. 110—7(f)). Given this result, the Langes' alternative argument need not be addressed.

We therefore reverse the trial judge's order directing the clerk to retain $1,000 as costs from each of the Langes' deposits and remand the cause to the circuit court to order refunds in this amount.

Affirmed in part, reversed in part, and remanded.

GREEN, P. J., and WEBBER, J., concur.