THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TONY WHITE, Defendant-Appellant.

First District (4th Division)   No. 77-247

Opinion filed March 9, 1978.

James J. Doherty, Public Defender, of Chicago (Ira Churgin, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ann Callum, and William McC. Montgomery, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant, Tony White, was convicted of attempt murder (Ill. Rev. Stat. 1975, ch. 38, par. 8—4) and sentenced to the penitentiary for a term of 4 to 6 years. Defendant contends that he was not proved guilty beyond a reasonable doubt because the victim's testimony was substantially impeached and inherently improbable.

The victim, Ricardo DeLeon, testified that in addition to his full-time clerical employment he worked in an "adult bookstore." DeLeon had previously met defendant and several other youths in a nearby restaurant where he bought them soft drinks. However, he denied seeing defendant for several weeks before the incident which occurred on December 20, 1975. About 1:30 a.m. on that date, he was awakened by a knock at his door, and upon opening the door he saw defendant and Don Golack. Both were holding guns. DeLeon told them to leave. At that moment, a shot was fired, apparently by Golack, which caused a burning sensation in DeLeon's eye. When the intruders forced their way into the apartment, a scuffle ensued between DeLeon and Golack with the latter calling to defendant "shoot him, shoot him." As DeLeon grabbed a metal bar, used to secure the front door, defendant shot him in the shoulder. The bullet traversed his body and lodged in his stomach. DeLeon then collapsed and the intruders fled without taking anything. DeLeon further testified that as a result of the incident he had to permanently wear glasses and that the bullet was still in his stomach. DeLeon informed police that both assailants fired at him, but denied telling the police that his assailants had come to purchase drugs.

On cross-examination, DeLeon said that sometime after this confrontation he met Golack and asked why he shot and tried to rob him. Golack replied that it was a "long story." A girl friend of one of the assailants had also told DeLeon their purpose was robbery.

Defendant's testimony was in substantial accord with his signed statement given to police about 8 hours after the shooting. Defendant admitted knowing DeLeon for several weeks before the shooting. About 6 p.m. on December 19, 1975, defendant met DeLeon who said he wanted to talk and suggested defendant come to his apartment. At 7:30 p.m., defendant purchased a .38 caliber revolver and ammunition from an unknown man at a restaurant. About 5 hours later, defendant went to DeLeon's apartment with Golack. Defendant entered while Golack

remained downstairs. During a conversation in the apartment, DeLeon asked defendant to engage in a homosexual act. Defendant declined and attempted to leave. DeLeon, however, grabbed at his coat and hit defendant on the left forearm with a garbage can to prevent his opening the door. As DeLeon grabbed a metal pipe, defendant pulled his gun to scare him. Defendant grabbed DeLeon and, as he did so, the gun discharged striking DeLeon in the chest. When defendant opened the apartment door, he saw Golack and both left. Defendant went to a motel where he was staying and was arrested later that morning.

Defendant denied he went to the apartment to rob DeLeon because he was a homosexual. He stated at trial that he did not know DeLeon was a homosexual before that night, although according to defendant's written statement, Golack told him about DeLeon's homosexuality several days before the incident.

Police Officer Walter Klein investigated the shooting and spoke to DeLeon about 10 days after the occurrence. At that time, DeLeon told Officer Klein that when he opened the door the assailants asked whether any drugs were for sale, but DeLeon said he had none. DeLeon also did not tell Officer Klein that when he opened the door he saw his assailants holding guns, and that the man who accompanied defendant had a gun. Officer Klein no longer had his notes pertaining to this conversation nor could he say whether defendant was under medication at the time.

Defendant now argues that he was justified in shooting DeLeon in order to stop the latter's attack upon him. He recognizes that the testimony of a single witness is sufficient to sustain a conviction if that witness is credible. (*People v. Catlett* (1971), 48 Ill. 2d 56, 63, 268 N.E.2d 378.) However, he maintains that DeLeon's testimony was impeached by Officer Klein and was inherently improbable. To support his contention, he refers to portions in DeLeon's testimony which were inconsistent with his report of the incident to Officer Klein. Specifically, defendant notes that DeLeon denied the assailants had spoken about narcotics, but Officer Klein said DeLeon had mentioned this conversation; and that DeLeon testified both assailants had guns drawn, but Officer Klein testified DeLeon told him neither assailant initially had a weapon drawn although later a weapon was produced by one intruder. Defendant also concludes DeLeon's testimony that two men with drawn guns confronted and shot him after he opened the door is "patently ridiculous."

The trial court at a bench trial is to resolve testimonial discrepancies and ascertain the witnesses' credibility. (*Catlett*, 48 Ill. 2d 56, 64.) It is apparent the trial court determined that DeLeon was unjustifiably shot by defendant. While there were variations between DeLeon's testimony and Officer Klein's recollection of the events described by DeLeon shortly after the shooting, we are of the opinion that the trial court was in a more

advantageous position to resolve the witnesses' credibility. We cannot say the trial court erred in this regard (see *People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733), nor can we accept the conclusion that defendant's conviction is based on an inherently improbable occurrence.

While not raised on appeal by defendant, we note that the trial court imposed a 4-year minimum sentence on defendant based on its belief that such sentence was the least required by law. In *People v. Moore* (69 Ill. 2d 520, 372 N.E.2d 666, our supreme court held that it was error for the trial court to impose a minimum sentence of 4 years on a person convicted of attempted murder believing that such sentence was required as a matter of law. The court noted that its decision did not prevent a trial court, in its sound discretion, from imposing a minimum sentence for crimes of attempt in accordance with section 8—4(c) of the Criminal Code of 1961. Ill. Rev. Stat. 1973, ch. 38, par. 8—4(c).

Accordingly, we affirm defendant's conviction but vacate the sentence. The cause is remanded to the circuit court for reconsideration of the sentence in light of the views expressed in *People v. Moore*.

Affirmed in part and remanded.

ROMITI and LINN, JJ., concur.