THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
IVORY CALVERT, Defendant-Appellant.

First District (4th Division)    No. 78-1632

Opinion filed March 6, 1980.

James J. Doherty, Public Defender, of Chicago (Vito A. Colucci and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James Veldman, and Thomas L. Brucker, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The defendant, Ivory Calvert, was charged with attempt murder (Ill. Rev. Stat. 1975, ch. 38, par. 8—4), and with two counts of aggravated battery (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(a)). After a bench trial, he was found guilty of attempt murder and sentenced to the Illinois Department of Corrections for a period of 5 to 10 years. The defendant appeals that conviction, and we affirm.

The issues presented for review are (1) whether the trial court erred in sentencing defendant to 5 to 10 years for attempt murder when defendant contends that attempt murder should be classified as a Class 4 felony, and (2) whether the memorandum of orders and mittimus should

be corrected to read that defendant was only convicted of attempt murder.

Charles Lake, the victim, testified that on June 26, 1977, he was in a liquor store parking lot at North Avenue and Halsted Street, in the city of Chicago. He and his brother, Dalton Lake, were standing near the "L" tracks when defendant approached him and said, "Man, what the hell are you trying to pull." Dalton Lake replied, "Go on man; leave us alone." According to Charles Lake, defendant then turned around and began shooting at Dalton Lake's feet. He (Charles) placed both his hands in the air and told defendant he was sorry if the defendant felt he had tried to do anything. He stated that defendant then shot him in the stomach, and as he ran from the gunfire defendant shot him in the leg. Finally, Charles Lake testified he ran to North Avenue where he asked a passerby to take him to the hospital.

On cross-examination, Charles Lake stated that he and his brother, Dalton Lake, arrived at the liquor store at approximately noon; while there, they consumed several quarts of beer. According to Charles Lake, he and his brother had occasion to take the car out of the parking lot that afternoon, and when they returned defendant asked them what were they "trying to pull." Defendant then accused Charles of trying to back over him with his car. Charles Lake also testified that he did not know defendant personally, but had seen him before in the liquor store parking lot.

Dalton Lake testified that on June 26, 1977, at approximately 5 p.m., he was in the parking lot of a liquor store located on North Avenue and Halsted Street, in the company of his brother, Charles Lake. He saw the defendant approach his brother and heard defendant say, "Hey, [expletive], what are you trying to pull." Dalton stated that defendant then accused his brother, Charles, of trying to back over him with his car. Dalton responded, telling defendant to go away. According to Dalton, the defendant began to walk away, but then turned around and pulled out a gun, pointing the weapon toward them. Defendant shot at his feet and then shot Charles in the stomach. As Charles ran from the gunfire, defendant shot at him again. Dalton stated he begged defendant to stop shooting at his brother, and defendant responded by putting the gun to Dalton's head and stating, "I'll kill all you * * * [expletive]." Defendant then turned and ran from the scene.

Chicago Police Officer Joseph Kosala testified that on June 26, 1977, pursuant to a radio assignment, he went to the area of Clyborn and Ogden to search for a man known as Ivory. He stated he had known defendant previously through his work assignment in the area. He saw defendant in the area and placed him under arrest. Officer Kosala stated he conducted a protective search of defendant and found a loaded revolver and some

ammunition on his person. He then read the defendant his *Miranda* rights. Thereafter, defendant voluntarily responded to Officer Kosala's questions and asserted, "I shot some guy. I wanted to rob him, but I changed my mind."

The defendant, Ivory Calvert, testified in his own behalf and stated that on June 26, 1977, he went to Sam's Liquors at approximately 4:30 p.m. While in the liquor store's parking lot, he walked over to speak to a man named Young. At that time, Dalton Lake grabbed him and began to wrestle with him. Defendant stated Dalton and he had wrestled on previous occasions. According to defendant, Dalton picked him up and placed him on the front end of an automobile. Thereafter, the Lake brothers drove from the parking lot, returning a short time later. Defendant asserted that he was standing near the trunk of another car when Charles backed his car up so that defendant was between the bumpers of the two cars. In the process, he was struck by Charles' car. Defendant then walked over to the car and asked Charles what was wrong. Dalton answered, telling him to go home. As he started to walk away, he heard Dalton say "* * * go ahead and shoot him." Defendant turned around and saw Charles attempt to take a pistol out of his pocket. He then took out his own gun. He shot at the ground, and as Charles continued to pull a gun from his pocket, defendant shot him. However, Charles Lake never took a gun out of his pocket.

The defendant denied having a conversation with the arresting officers, and he specifically denied saying he shot Charles Lake while considering an attempt to rob him.

At the conclusion of the bench trial, defendant was found guilty of attempt murder and sentenced to 5 to 10 years' imprisonment. Defendant appeals that conviction.

Defendant contends the court erred in sentencing him to 5 to 10 years for attempt murder. He asserts that attempt murder must be classified as a Class 4 felony, and the sentence entered was impermissible. Section 8—4(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 8—4(c)) provides for the sentence after conviction for an attempt:

"(c) Sentence.

A person convicted of an attempt may be fined or imprisoned or both not to exceed the maximum provided for the offense attempted but, except for an attempt to commit the offense denied in Section 33A—2 of this Act.

(1) the sentence for attempt to commit murder shall not exceed the sentence for a Class 1 felony;

(2) the sentence for attempt to commit a Class 1 felony shall not exceed the sentence for a Class 2 felony;

(3) the sentence for attempt to commit a Class 2 felony shall not exceed the sentence for a Class 3 felony; and

(4) the sentence for attempt to commit any felony other than those specified in Subsections (1), (2) and (3) hereof shall not exceed the sentence for a Class 4 felony."

Defendant cites *People v. Moore* (1978), 69 Ill. 2d 520, 372 N.E.2d 666, as standing for the proposition that attempt murder is not a Class 1 felony. Defendant asserts that since attempt murder is not specified as a crime within a particular class the statutory provision compels that it then be designated a Class 4 felony (Ill. Rev. Stat. 1975, ch. 38, par. 1005—5—2(a)), and the sentence cannot exceed 3 years. The maximum sentence for a Class 1 felony is any term in excess of 4 years (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(a)(2)).

We do not agree with defendant's contention. In *Moore*, the supreme court stated:

"[W]e affirm the appellate court's reversals of the circuit court's judgment for the latter court's mistaken belief that a minimum sentence of 4 years was required as a matter of law." (*Moore*, at 524.)

The court based its decision on the trial court's mistaken belief that it had to impose a minimum sentence of 4 years as a matter of law. Our courts have followed *Moore*. See *People v. White* (1978), 58 Ill. App. 3d 726, 729, 374 N.E.2d 783, 786.

■■ Upon the conclusion of the trial, the court heard arguments in aggravation and mitigation and sentenced defendant to be incarcerated for a minimum period of 5 years and a maximum period not to exceed 10 years. Subsequent to the sentencing, the assistant State's Attorney asked whether the sentence was to run concurrently on both charges of aggravated battery and attempt murder. The trial judge stated the convictions merged since they arose out of the same act. When more than one offense arises from a series of closely or incidentally related acts, and they are not by definition lesser included offenses, convictions with concurrent sentences can be given. *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 845.

We find nothing in the record to indicate the trial judge misconceived the scope of his discretion in sentencing defendant.

■■ It is a well-settled proposition that the burden on appeal is on appellant to demonstrate any error in the record, and a failure to do so gives a presumption of regularity which attaches to the trial court proceedings. (*People v. Schomer* (1978), 64 Ill. App. 3d 440, 445-46, 381 N.E.2d 62, 66.) The sentence imposed was within the trial court's discretion, and we find no basis for remanding this case for resentencing.

■■ Defendant also contends since he was only found guilty of attempt murder and not of the additional offense of aggravated battery, the memorandum of order and mittimus should be corrected to so reflect. We agree.

Since the trial court found that the offense of attempt murder merged into the aggravated battery charge, it would be inappropriate to sentence defendant on both offenses. However, the memorandum of orders indicates defendant was found guilty on all counts and sentenced on all counts concurrently. Correction is required.

For the foregoing reasons, we affirm the conviction of defendant on the charge of attempt murder. Further, we remand the case to the clerk of the trial court to correct the memorandum of orders and mittimus in accordance with our ruling set forth above.

Affirmed and remanded.

LINN, P. J., and JIGANTI, J., concur.