JUSTICE JIGANTI
 

 delivered the opinion of the court:
 

 After a jury trial, the defendants, Antonio Perez and Albert Pagliuca, were found guilty of solicitation and conspiracy to commit the murder of Ramona Rodriguez. Perez was sentenced to an extended term of 50 years for solicitation and 14 years for conspiracy. The two sentences were to run concurrently, but they were to run consecutively to the 60 year sentence Perez was serving for another felony conviction. Pagliuca was sentenced to concurrent terms of 20 years for solicitation and seven years for conspiracy. On appeal, the codefendants together and individually raise issues regarding reasonable doubt, jury instructions, sentencing, suppression of evidence, admissibility of evidence, jury selection and prosecutorial misconduct.
 

 Both defendants initially contend that the State failed to prove them guilty beyond a reasonable doubt of solicitation to commit murder. At trial, Kenneth Middleton testified that in early November of 1979, both he and Perez were incarcerated together in Cook County jail and that during this period of time, he had several conversations with Perez. Perez told him that if Middleton was willing to arrange to kill a witness in a case pending against Perez, that he would help with bond money for Middleton’s release and that Perez would set Middleton up with a place to stay, a loaded gun, safe transport to Mexico and safekeeping once Middleton got there. Middleton then informed law enforcement officials of Perez’ offer and he arranged with the State’s Attorney to have a police officer pose as a “hit man” for Perez. After further discussions with Perez, Middleton reached an agreement with him wherein Middleton would provide the “hit man,” as previously arranged with the State’s Attorney, and Perez would supply the gun for the hit man. Middleton’s testimony went on to reveal that Perez made several phone calls to codefendant, Pagliuca, in which Perez requested Pagliuca to get a gun and deliver it to “Frankie C” (James Houtsma, who was the undercover police officer posing as the alleged hit man). Middleton testified that an additional call was made by Perez to Pagliuca to confirm the delivery of the gun. Officer Houtsma also testified for the State. He indicated that he met Pagliuca at a prearranged location and that Pagliuca handed him a paper bag containing a gun. Houtsma refused to take the bag unless Pagliuca would tell him what the gun was for and who he was supposed to “hit.” Houtsma further testified that Pagliuca then cooperated with him by providing the requested information. Houtsma then took the gun and returned to the police station. During the defense’s case in chief, codefendant Pagliuca took the stand. Pagliuca admitted giving the alleged hit man, Houtsma, the gun and also admitting revealing to Houtsma the purpose for the gun and the name and general whereabouts of the intended victim.
 

 Perez contends that he obviously did not solicit James Houtsma to commit murder because he never had any contact with Houtsma. However, Perez does not address the issue as to his solicitation of Middleton. Perez did not address this issue because Middleton was not named as the person solicited in the indictment. Although not named in the indictment, Middleton was included along with Houtsma in the jury instructions, thereby effectively amending the indictment. This was done over Perez’ objection and the propriety of so doing forms the next issue on appeal. Perez asserts that he may have solicited somebody, but it certainly was not Houtsma. Pagliuca argues that regardless of his conduct he did not solicit anyone because the crime of solicitation to commit murder was completed when Perez requested Middleton to kill a witness.
 

 The applicable statute in the instant case is set out in section 8 — 1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 8 — 1) and provides as follows:
 

 “A person commits solicitation when, with intent that an offense be committed, he commands, encourages or requests another to commit that offense.”
 

 The offense of solicitation is complete when the principal offense is commanded, encouraged or requested with the intent that it be committed. (People v. Hairston (1970), 46 Ill. 2d 348, 263 N.E.2d 840, cert, denied (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658; People v. Harvey (1981), 95 Ill. App. 3d 992, 420 N.E.2d 645; People v. McCommon (1979), 79 Ill. App. 3d 853, 399 N.E.2d 224.) Also, the law is well settled that intent is a state of mind and may be inferred from the surrounding circumstances since every sane person is presumed to intend all the natural and probable consequences of his actions. People v. Koshiol (1970), 45 Ill. 2d 573, 578, 262 N.E.2d 449, cert, denied (1971), 401 U.S. 978, 28 L. Ed. 2d 329, 91 S. Ct. 1209.
 

 In the instant matter, Perez clearly solicited Houtsma through Middleton to commit the offense of murder. Perez directly requested Middleton to arrange to kill a witness for him. Perez’ intent that the murder be committed can be inferred from his subsequent conduct in making specific arrangements with Pagliuca to deliver the gun to Houtsma. The entire sequence of events between the codefendants, Middleton and Houtsma must be viewed as a single transaction, one solicitation. Consequently, the evidence shows beyond a reasonable doubt that Perez solicited Houtsma and/or Middleton.
 

 Contrary to Pagliuca’s contention that solicitation was com-
 

 pleted when Perez requested Middleton to kill a witness, the solicitation to murder Ramona Rodriguez was a continuous act of encouraging and requesting another, that is Houtsma or Middleton to commit an offense. That offense was completed under these facts by Pagliuca delivering the gun to Houtsma, the alleged hit man, and informing Houtsma of the purpose of the gun and the identity of the victim. Therefore, the offense of solicitation to murder Ramona Rodriguez was an ongoing event that clearly included Pagliuca’s transaction with Houtsma.
 

 To the extent Pagliuca alternatively argues that his conduct did not amount to solicitation, we find that Pagliuca’s actions similarly follow in the statutory definition of solicitation, “to encourage another to commit an offense.” When Pagliuca delivered the gun with the knowledge of its intended purpose, he “encouraged” Houtsma to commit murder. As applied in Koshiol, Pagliuca had the requisite intent as inferred from his actions and the surrounding circumstances. Accordingly, Pagliuca solicited another to commit a crime with the intent that it would be committed, and thus the trial court did not err in finding that the State met its burden of proving Pagliuca guilty beyond a reasonable doubt of solicitation to commit murder.
 

 Both defendants contend that their constitutional rights to due process were violated because of the variance between the indictment and the jury instruction. As mentioned previously, the indictment charged the defendants with the solicitation only of Houtsma whereas the jury instruction provided that they could be found guilty of solicitation if the jury found that they solicited either Middleton or Houtsma. They both claim that they were greatly prejudiced and that this constituted reversible error.
 

 From the outset of the trial, both defendants presented defenses that included a thorough consideration of Middleton. In opening statements, the defense introduced its characterization of Middleton as a professional criminal and a self-serving liar. During cross-examination, both defense counsel spent extensive time in developing facts that would impugn Middleton’s credibility as a witness. Finally, in closing arguments, Middleton was accused by the defendants of being the principal architect in the alleged solicitation and that his account of the story was a fabrication designed to keep him from spending the rest of his life in jail. The trial transcript was replete with remarks and questions involving Kenneth Middleton.
 

 The law in Illinois is that any variance between the offense specified in the indictment and the offense described in jury instructions does not vitiate a conviction unless the variance is of such a character
 

 as to mislead the defendants in their defense or expose them to double jeopardy. (People v. Rosochacki (1969), 41 Ill. 2d 483, 244 N.E.2d 136; People v. Foster (1982), 103 Ill. App. 3d 372, 431 N.E.2d 430.) The facts in the instant case reveal that the transactions involving the two codefendants, Middleton and Houtsma, are all inextricably linked. Perez dealt directly with Middleton while in jail. Middleton informed Perez of the availability of a third-party “hit man,” Houtsma, on the “outside.” Finally, Perez recruited Pagliuca to provide and deliver the gun to Houtsma. Each separate act was an integral part of the solicitation to murder Ramona Rodriguez.
 

 Due to this closeness of all the parties, the defendants could not have reasonably believed that when they were indicted for the solicitation of Houtsma that it would not also be necessary to prepare in their defense an explanation for the transactions involving Middleton. Without the knowledge that Middleton would be named in the solicitation instruction to the jury, both defendants, by their thorough treatment of Middleton at all stages of the trial, demonstrated a full awareness of the significance of Middleton in preparing their defense.
 

 The defendants were adequately apprised of the nature of the case and were not prejudiced in the preparation of the defense by the variance between the indictment and the jury instruction. As to the issue of exposure to double jeopardy, the defendants have admitted that they were not subject to such exposure. Therefore, we will not address that issue. Accordingly, we find that the trial court did not err in giving the instruction.
 

 Both defendants additionally contend that the trial court invoked an illegal sentence as a result of improperly classifying the crime of solicitation. The defendants’ position is that the charge of solicitation to commit murder was at the time the commission of the crime occurred, an unclassified offense. Defendants further assert that any unclassified offense shall be considered for sentencing purposes a Class 4 felony. (Ill. Rev. Stat. 1979, ch. 38, par. 1005 — 5—2.) The corresponding sentence for a Class 4 felony is not less than one year and not more than three years. (Ill. Rev. Stat. 1979, ch. 38, par. 1005 — 8—1(a)(7).) Accordingly, defendants maintain that the sentences received, 20 years for Pagliuca and 50 years for Perez, were invoked in total disregard of the maximum sentence mandated by the purported applicable statute.
 

 The solicitation to commit murder occurred in November of 1979, and both defendants elected to be sentenced under the law in effect at the time of the commission of the crime. (Ill. Rev. Stat. 1979, ch. 38, par. 1008 — 2—4(b).) At that time, the law in effect for solicitation provided as follows:
 

 “A person convicted of solicitation may be fined or imprisoned or both not to exceed the maximum provided for the offense solicited: Provided, however, the penalty shall not exceed the corresponding maximum limit provided by sub-paragraph (c) of Section 8 — 4 of this Act ***.” (Ill. Rev. Stat. 1979, ch. 38, par. 8 — 1(b).)
 

 Section 8 — 4(c)(2) (attempt) provided:
 

 “(c) *** A person convicted of an attempt may be fined or imprisoned or both not to exceed the maximum provided for the offense attempted ***.
 

 (1) the sentence for attempt to commit murder shall not exceed the sentence for a Class X felony.” (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 8 — 4(c)(1).)
 

 In other words, section 8 — 1(b) states that the sentence for soliciting an offense is the same as a sentence under section 8 — 4(c) for attempting an offense.
 

 Both defendants assert that because the language in section 8— 4(c) only provides for a maximum sentence (“shall not exceed”) and specifically fails to mandate a minimum term of imprisonment, the court is necessarily compelled to find that solicitation to commit murder is an unclassified offense. A similar argument already has been specifically rejected by this court in People v. Musial (1980), 90 Ill. App. 3d 930, 414 N.E.2d 61, and People v. Calvert (1980), 82 Ill. App. 3d 350, 402 N.E.2d 638. Both courts held that attempt murder was not an unclassified offense but rather a Class 1 felony. Although the above cases involved attempt murder rather than solicitation to commit murder, we have already demonstrated how the two offenses are statutorily equated for sentencing purposes. Therefore, solicitation to commit murder is a Class X felony (amended from a Class 1 felony).
 

 The sentence for a Class X felony is not less than six and not more than 30 years. (Ill. Rev. Stat. 1979, ch. 38, par. 1005 — 8—1(aX3).) Pagliuca was sentenced to 20 years for solicitation to commit murder. Since solicitation to commit murder is a Class X felony, Pagliuca’s sentence was well within the statutory limit. Perez was sentenced to an extended term of 50 years’ imprisonment. Since Perez has been convicted of two Class X felonies within the previous 10 years, he was properly sentenced to an extended term of 50 years’ imprisonment for solicitation to commit murder. (Ill. Rev. Stat. 1979, ch. 38, pars. 1005 — 5—3.2(b)(1), 1005 — 8—2(a)(2).) Accordingly, the trial court did not invoke illegal sentences on the defendants.
 

 In a related sentencing issue, defendant Pagliuca contends that the sentences imposed by the court were excessive and constituted an abuse of discretion. Pagliuca was found guilty of both conspiracy and solicitation to commit murder and was sentenced to seven years and 20 years respectively.
 

 The length of sentence to be imposed upon the convicted defendant is a matter that lies within the sound discretion of the trial court, and absent an abuse of discretion, a sentence will not be disturbed on review. (People v. Perruquet (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) In the instant case, the evidence conclusively showed that Pagliuca conspired with Perez to murder a witness, Ramona Rodriguez, and that Pagliuca solicited James Houtsma to murder Rodriguez. The sentence for conviction of conspiracy to commit murder, a Class 2 felony (Ill. Rev. Stat. 1979, ch. 38, par. 8 — 2(c)), is not less than three years and not more than seven years. (Ill. Rev. Stat. 1979, ch. 38, par. 1005 — -8—1(a)(5).) Therefore, Pagliuca’s seven-year sentence was within the statutory limit. As previously discussed, Pagliuca’s 20-year sentence for solicitation to commit murder was also well within the statutory limit. (Ill. Rev. Stat. 1979, ch. 38, par. 1005 — 8—1(3).) Therefore, the trial court did not impose excessive sentences constituting abuse of its discretion.
 

 The defendant, Perez, next contends that his right to due process was violated when the trial court refused to instruct the jury on his entrapment defense. The defendant asserts that even though he did not take the stand to testify, the entrapment defense was still raised through evidence presented in Middleton’s testimony.
 

 Perez contends that Middleton’s testimony reveals that Perez requested Middleton to arrange a murder for him. It further reveals that Middleton, in a coordinated effort with the State aided Perez in developing the scheme to murder Rodriguez by providing Perez with the idea of using a hit man, “selling” him on the method of eliminating the witness, arranging for an undercover officer to pose as the alleged hit man and coordinating the “fake hit” of Rodriguez. The defendant asserts that these cumulative actions of the State served to induce him to engage in criminal conduct that he otherwise would not have engaged in.
 

 The general rule in Illinois regarding entrapment defenses states that in order to raise the issue of entrapment a defendant must admit that there was a crime committed and that he committed it, but was entrapped into doing so. (People v. Arriaga (1981), 92 Ill. App. 3d 951, 416 N.E.2d 418.) A failure to make such admission will preclude the defendant from claiming the jury should have been instructed regarding entrapment. (People v. Swimley (1978), 57 Ill. App. 3d 116, 372 N.E.2d 887, cert, denied (1978), 439 U.S. 911, 58 L. Ed. 2d 257, 99 S. Ct. 281.) The line of cases following these principles have all addressed the entrapment defense issue wherein the defendant takes the stand to testify.
 

 In the instant case, Perez pled not guilty to the crimes charged, did not testify and did not present any evidence of facts inconsistent with his entrapment defense. The standard to be applied in this situation raises questions regarding the application of the established rule as stated above. Because it appears that Illinois has never directly responded to an entrapment defense wherein a defendant did not testify, a brief discussion of the various positions taken by the courts and their corresponding rationales would be instructive.
 

 The holding in a majority of jurisdictions, including Illinois, is that a defendant may not deny commission of the crime and at the same time claim entrapment. (People v. Fleming (1971), 50 Ill. 2d 141, 277 N.E.2d 872; Annot., 5 A.L.R.4th 1128, 1135 (1981) (this annotation cites 24 States that maintain the majority position).) The rationale for this position is based on what has been referred to as the “inconsistency theory.” This theory focuses on the factual inconsistency of taking the stand to deny committing the predicate acts while contemporaneously making a claim of being entrapped into committing those same acts. It forces the defendant to make an election between admitting the deed and relying on the defense or denying the deed and waiving the defense. (United States v. Annese (1st Cir. 1980), 631 F.2d 1041, 1046.) While Illinois has never specifically labeled its holding “inconsistency theory” nor expressed its rationale in such definite terms, the Illinois courts have still reached the same conclusion based on the same underlying rationale. People v. Moran (1941), 378 Ill. 461, 38 N.E.2d 760, affirming People v. Parker (1941), 310 Ill. App. 307, 34 N.E.2d 110, cert, denied (1942), 316 U.S. 665, 86 L. Ed. 1741, 62 S. Ct. 945; see Groot, The Serpent Beguiled Me and I (Without Scienter) Did Eat — Denial of Crime and the Entrapment Defense, 1973 U. Ill. L.F. 254.
 

 In contrast, a number of jurisdictions have held that a defendant may take the stand and deny the alleged criminal acts while also asserting a defense of entrapment. (People v. Perez (1965), 62 Cal. 2d 769, 401 P.2d 934, 44 Cal. Rptr. 326; State v. Harrington (La. 1976), 332 So. 2d 764; People v. D'Angelo (1977), 401 Mich. 167, 257 N.W.2d 655; State v. Branam (1978), 161 N.J. Super. 53, 390 A.2d 1186, aff’d (1979), 79 N.J. 301, 399 A.2d 299; People v. Johnston (1975), 47 App. Div. 2d 897, 366 N.Y.S.2d 198; State v. McBride (1979), 287 Or. 315, 599 P.2d 449.) This position corresponds with the law in other criminal areas, which allows the defendant in a criminal prosecution to assert inconsistent defenses. (People v. DeRosa (1941), 378 Ill. 557, 39 N.E.2d 1 (self-defense and misadventure); People v. Jersky (1941), 377 Ill. 261, 36 N.E.2d 347 (self-defense and misadventure); People v. Smith (1970), 121 Ill. App. 2d 105, 257 N.E.2d 261 (denial and voluntary manslaughter); see 21 Am. Jur. 2d Criminal Law sec. 191 (1981).) The rationale for the minority entrapment position is based on the belief that a criminal defendant should be accorded every reasonable protection in defending himself against governmental prosecution, and that the primary function of entrapment is to safeguard the integrity of the law enforcement and prosecution process. United States v. Demma (9th Cir. 1975), 523 E2d 981, 985 (en banc).
 

 A significant variation on the two preceding positions involves a situation, as in the instant case, where the defendant has chosen not to testify. The courts that have addressed this issue have held that an entrapment defense is available to a defendant who pleads not guilty, who chooses not to testify and who does not introduce any evidence inconsistent with the defense of entrapment. (United States v. Goressel (5th Cir. 1971), 440 F.2d 602, cert, denied (1971), 403 U.S. 933, 29 L. Ed. 2d 713, 91 S. Ct. 2263; United States v. Valencia (2d Cir. 1980), 645 F.2d 1158; United States v. Demma (9th Cir. 1975), 523 F.2d 981 (en banc); Norman v. State (Tex. Crim. App. 1979), 588 S.W.2d 340, cert, denied (1980), 446 U.S. 909, 64 L. Ed. 2d 261, 100 S. Ct. 1836.) The rationale for this position is that when a defendant does not testify or introduce any evidence inconsistent with the entrapment defense, no inconsistencies appear in the record and therefore there is no contravention of the “inconsistency theory.”
 

 We find that this position does not conflict with the Illinois standard for entrapment. Therefore we hold that a defendant who does not take the stand or offer testimony inconsistent with his assertion of entrapment is entitled to raise a defense of entrapment if the record contains some evidence that an entrapment has occurred.
 

 The defense of entrapment is an affirmative defense and in order to raise it the defendant must present some evidence of entrapment. (People v. Fisher (1979), 74 Ill. App. 3d 330, 392 N.E.2d 975.) However as a practical matter, it has been observed that it will be difficult for a defendant to point to evidence of entrapment without taking the stand. (United States v. Demma (9th Cir. 1975), 523 F.2d 981, 985 (en banc).) In Illinois, it is well established that “entrapment can exist only when the criminal intent originates in the mind of the entrapping officer, and if such intent arose in the mind of the accused there is no entrapment, though officers may afford an opportunity for the commission of the offense and use artifice and strategem to apprehend one actually engaged in a criminal enterprise.” People v. Outten (1958), 13 Ill. 2d 21, 23,147 N.E.2d 284, 285-86.
 

 In the instant case, the record fails to support the defendant’s assertion that there was some evidence of entrapment. The evidence reveals that Perez requested Middleton to murder a witness in a pending trial against him. Even though the State legitimately provided opportunities for Perez to further his idea to murder Rodriguez, the fact that the intent to murder her originated with Perez compels this court to find that no entrapment existed. Accordingly, Perez is not entitled to a jury instruction regarding a defense of entrapment and the trial court was correct in so holding.
 

 Perez additionally contends that his constitutional rights to counsel and due process were violated when the court failed to sustain his motion to suppress evidence. Perez asserts that at all relevant times, he was represented by counsel and that the State deliberately elicited statements from him in direct contravention of his sixth amendment right to counsel. Perez further asserts that as a result of this constitutional violation, said statements were inadmissible at trial and that their admission was reversible error.
 

 In October and November of 1979, while Perez was incarcerated in Cook County jail awaiting trial for charges of rape and armed robbery, he was represented by counsel. Contemporaneously, Middleton and Perez were involved in implementing a plan to murder a witness in Perez’ pending trial. At the instant trial, with the help of Middleton’s testimony regarding his conversations with Perez, the defendant was convicted of solicitation and conspiracy to murder Ramona Rodriguez.
 

 It is well established that a defendant’s sixth amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. (Kirby v. Illinois (1972), 406 U.S. 682, 32 L. Ed. 2d 411, 92 S! Ct. 1877; People v. Earl (1979), 78 Ill. App. 3d 188, 397 N.E.2d 97.) The court in Kirby v. Illinois (1972), 406 U.S. 682, 688, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1881, held that formal charges, preliminary hearing, indictment, information or arraignment were ways of initiating adversary judicial proceedings. Once the sixth amendment right to counsel attaches, .defendant’s statements deliberately elicited by a government agent in the absence of counsel, violates that sixth amendment right. (Massiah v. United States (1964), 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199.) The court in Massiah made it clear, however, that it was entirely proper to continue the investigation of the suspected criminal activities of the defendant even though he had already been indicted. (Massiah v. United States (1964), 377 U.S. 201, 207, 12 L. Ed. 2d 246, 251, 84 S. Ct. 1199, 1207.) As cited in United States v. Moschiano (7th Cir. 1982), 695 F.2d 236, 240-41:
 

 “It is equally clear that Massiah offers no immunity from liability for uncounselled, post-indictment statements that involve criminal acts or constitute criminal acts in themselves. Such statements, even though deliberately elicited by government agents after indictment and in the absence of counsel, may form the basis for a separate or superseding indictment and may be offered to prove such additional charges. Hoff a v. U.S., 385 U.S. 293, 87 S. Ct. 408, 17 L. Ed. 2d 374 (1966).”
 

 Even though Perez was represented by counsel and his sixth amendment right had attached as a result of the indictment for rape and' armed robbery, the information deliberately elicited from Perez by Middleton did not violate Perez’ sixth amendment right to counsel. The statements elicited concerning the plan to murder Ramona Rodriguez constituted criminal acts in themselves and did form the basis for a separate indictment. Therefore, based on United States v. Moschiano (7th Cir. 1982), 695 F.2d 236, as it interpreted Massiah, the State did not violate Perez’ sixth amendment right to counsel, and the trial court properly denied Perez’ motion to suppress statements he made in relation to the solicitation and conspiracy to murder Ramona Rodriguez.
 

 Both defendants also contend that their constitutional rights to due process were violated by the State’s persistent reference to unrelated crimes or criminal conduct. Specifically, the defendants allege that they suffered grave prejudice when the State elicited testimony, despite the court’s alleged earlier granting of defendant’s motion in limine to preclude such testimony, which reveals that Perez and Pagliuca had dealt with a narcotics dealer before; that Perez talked about bombing a particular location; that Middleton had saved the lives of two witnesses; that there had been an unrelated hit and a phony abduction; and that the State’s witnesses made numerous references to the bomb and arson unit and the gang crimes unit.
 

 Initially, it is relevant to note that the trial court did not sustain defendant’s motion in limine to preclude any direct or indirect reference to unrelated criminal conduct during the trial. Rather, the court reserved its ruling because the court did not have all the evidence before it at that time. The court indicated it would make its determinations on any reference to unrelated criminal conduct as the trial progressed.
 

 Two additional matters that can be considered before addressing the substance of defendant’s alleged violations are the purported reference to Perez’ talk of bombing a particular location and the numerous references to specific police units. As to the bombing, the defendants have failed to indicate where in the record such a reference was made in front of the jury. Said reference to a bombing was elicited from Middleton during the suppression hearing, however, this testimony was clearly not heard by the jury. Accordingly, the defendant’s claim of prejudice as to this reference is without merit. Moreover, the references made to the bomb and arson unit and the gang crime unit were used as identification of the officers’ assignment and did not raise inferences so clearly as to prejudice the defendants. Therefore, defendants’ contention of prejudice regarding the police units also fails.
 

 In a case strikingly similar to the instant matter, the defendant in People v. Cramer (1978), 64 Ill. App. 3d 688, 381 N.E.2d 827, was charged with conspiracy and solicitation to commit murder. In Cramer, the court held that testimony of the defendant’s co-conspirator concerning a loan to him from defendant secured by marijuana was properly admitted as relevant to the course of the developing conspiracy, rather than being wholly extraneous to the relation between the parties. The standard used by the Cramer court was whether the evidence was clearly intertwined with the negotiation and progress of the conspiracy and did not concern independent and wholly unrelated conduct clearly apart from the offense charged. People v. Cramer (1978), 64 Ill. App. 3d 688, 695, 381 N.E.2d 827, 832.
 

 In the instant case, Middleton’s testimony concerning the narcotics dealer can be readily applied to the principle espoused in Cramer. The fact that Middleton would have had his bond money provided through the aid of a “dope dealer Perez and Pagliuca knew from the neighborhood” is clearly intertwined with the negotiation and progress of the conspiracy. Middleton was solicited by Perez to kill a witness in return for bond money for Middleton’s release and safe passage out of the country. How Middleton was to be paid is relevant to the acts constituting the perpetration of the conspiracy. Likewise, Middleton’s testimony concerning his saving the lives of two witnesses, the unrelated hit and the phony abduction were not independent and wholly unrelated conduct clearly apart from the offense charged, conspiracy to commit murder. The jury was privy to all the evidence presented at trial and thus was fully aware of the State’s plan and all of its details. The evidence showed that only one witness’ life was saved and that the State arranged for the rumor of an abduction and an unrelated hit in furtherance of their efforts to arrest the defendants for the commission of the crime charged. Each of the above statements made at trial, which are now raised on appeal as being prejudicial to the defendants, was relevant to the course of the developing conspiracy.
 

 As to the testimony concerning the narcotics dealer and the two witnesses’ lives being saved, assuming the trial court was correct in sustaining the defendant’s objections, the trial court then promptly instructed the jury to disregard that testimony and thus cured any possible prejudice that may have resulted. (People v. Wilson (1972), 51 Ill. 2d 302, 281 N.E.2d 626.) Accordingly, the defendant’s constitutional rights to due process were not violated by references to other crimes or criminal conduct.
 

 Both defendants further contend that they were deprived of their right to due process when the State withheld material information from the defense concerning promises made to the State’s main witness. The defendants allege that as a result of the State’s failure to inform the defense that (1) Middleton had been charged with armed violence and unlawful restraint; (2) that Middleton received $150 cash from the State; (3) that Middleton had his bond lowered; (4) and that Middleton received credit against his sentence for the time he spent in the witness quarters, the jury was unable to accurately evaluate Middleton’s credibility. Consequently, the jury resolved the case differently than had they known the true nature of Middleton’s deal.
 

 A violation of due process occurs when a prosecutor, regardless of motive, suppresses evidence material to the question of the defendant’s guilt or innocence after there has been a request for its production. (Brady v. Maryland (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194.) To prove that there has been a violation it must be shown that the evidence was suppressed following a request for it by the defendant and that the evidence was favorable to the defendant and material to either guilt or punishment. (Moore v. Illinois (1972), 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562; People v. Nichols (1976), 63 Ill. 2d 443, 349 N.E.2d 40.) Materiality in a constitutional sense is not the mere possibility that the undisclosed information might have helped the defense or affected the outcome of the trial. Rather, the omitted evidence is material if, when one evaluates it in the context of the entire record it creates a reasonable doubt of defendant’s guilt. United States v. Agurs (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392; People v. Smith (1982), 111 Ill. App. 3d 895, 444 N.E.2d 801.
 

 In the instant case, the record reveals that although counsel for the defendants were not specifically aware of the charges of armed violence and unlawful restraint, the jury was fully apprised of all the facts of the armed robbery. Likewise, while unaware of the $150, the jury was aware of the fact that Middleton had a new suit from “unknown” sources. Additionally, the record demonstrates that the jury was clearly aware of the fact that Middleton had spent two years in the witness quarters and that as a result of that time spent there, Middleton would walk out a free man at the conclusion of the trial. The only fact the jury was not informed of was that Middleton had his bond reduced. When the nondisclosures referred to by the defendants are taken cumulatively, and evaluated in the context of the entire record, they fail to create a reasonable doubt of defendants’ guilt. Accordingly, we find that the defendants received a fair trial.
 

 Finally, both defendants contend that their constitutional rights to trial by jury and rights to due process were violated by the systematic exclusion by the prosecutor of blacks and Hispanics from the jury. Even if we assume that the defendants’ contention is correct, the Illinois Supreme Court’s recent decision in People v. Williams (1983), 97 Ill. 2d 252, 454 N.E.2d 220, is dispositive of this issue. In Williams, the court held that a prosecutor may constitutionally exercise peremptory challenges to eliminate blacks from the jury if no distinctive groups within the community have systematically been excluded from the jury pool. In the instant case, the defendants make no argument that certain groups within the community have been systematically excluded from the jury pool. Therefore, under Williams, we need not reach the merits of this issue.
 

 Based on the foregoing reasons we affirm the trial court’s decision.
 

 JOHNSON and LINN, JJ., concur.