THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DERRICK SIMS, Defendant-Appellant.

Fifth District    No. 5—98—0775

Opinion filed July 25, 2000.

Daniel M. Kirwan and Janet Gandy Fowler, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Joe Jackson, State's Attorney, of Metropolis (Norbert J. Goetten, Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Derrick Sims (defendant) was convicted by a jury in the circuit court of Massac County of first-degree murder (720 ILCS 5/9—1(a)(1) (West 1996)), two counts of solicitation of murder (720 ILCS 5/8—1.1(a) (West 1996)), and two counts of aggravated battery with a firearm (720 ILCS 5/12—4.2(a)(1) (West 1996)). The trial court imposed consecutive sentences of 28 years' imprisonment for first-degree murder, 15 years' imprisonment each count for solicitation of murder, and 6 years' imprisonment each count for aggravated battery with a firearm. Defendant contends on appeal that the inchoate offenses of solicitation to commit murder cannot stand in the face of his conviction of the principal offense of first-degree murder.

The evidence adduced at trial reveals that during the early evening hours of February 6, 1997, Dennis Fitts was lying in wait in the home of Carolyn Riley. Riley and her boyfriend, Dempsey Crim, arrived home that evening and entered the darkened premises. Riley thought something was amiss because the light switches in the living room were not functioning. Fitts sprang up from hiding and shot Dempsey in the mouth, shattering his dentures, breaking his jaw, and seriously impairing the vision in his right eye. Next, Fitts grabbed Dempsey and shot him in the nose, where the bullet still remains. Dempsey lost consciousness for an undetermined period of time and

eventually crawled out the back door of the house to seek assistance. After reaching his automobile, Dempsey managed to drive himself to the Metropolis police station to report the shooting, despite bleeding profusely from his wounds. Police officers went to Riley's house and found her lying facedown in her bedroom, with a fatal gunshot wound to the head. An autopsy revealed that Riley also suffered blunt-trauma injury to her head.

The undisputed evidence supports the State's theory of the case that defendant orchestrated the shootings from a jail cell at the Massac County Detention Center, where he was being held in conjunction with a drug prosecution. Defendant's motive was anger at being set up by Riley, who had participated as a confidential source for the Southern Illinois Drug Task Force and assisted in building the drug case against him.

On January 7, 1997, defendant's attorney in the drug prosecution filed a motion for discovery of the names of the confidential sources involved in the drug prosecution. On January 14, 1997, the State furnished defendant's attorney with the names of two confidential sources, Riley and her sister, Sharon Goodman.

According to the three cellmates who shared a jail cell with defendant at the detention center during the months of January and February 1997, defendant frequently referred to Riley as a "snitching bitch." One of the cellmates, Donald Thomas, was asked by defendant if he could arrange to have Riley killed. This request was heard by another cellmate, James Henshaw. Henshaw and defendant shared a bunk in the jail cell. From Henshaw's upper berth, he observed defendant write a note within two weeks of the shootings. The note stated, "[I]f Carolyn [Riley] were taken care of, I would not have to go to the pen." Defendant told Henshaw that he would display the note to his visitor, who could read it through a Plexiglass divider in the jailhouse visitor's area. Henshaw observed defendant flush a note down the toilet upon his return from visitation on February 5, 1997.

On February 5, 1997, the day before the shootings, defendant was visited at the jail by his friend Dennis Fitts, with whom he shared a trailer in Clinton, Kentucky. Fitts was linked to the shootings by a shoe impression left on a Plexiglass window that was knocked out of the front door of the Riley home. He was ultimately convicted of first-degree murder and two counts of aggravated battery with a firearm. See *People v. Fitts*, No. 5—98—0417 (February 18, 2000) (unpublished order pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23)). Authorities seized a tennis shoe from a closet in the Clinton, Kentucky, trailer where Fitts lived that matched the impression on the Plexiglass window.

While watching television at the jailhouse a day after the shootings, defendant and his cellmates viewed a news report of Riley's death. Defendant expressed relief at the news and stated that "the bitch snitched on the wrong person." Defendant later told Henshaw that defendant figured that authorities would find out that "Dennis did it."

The jury found defendant guilty of first-degree murder, two counts of aggravated battery with a firearm under accountability theories, and two counts of solicitation. Judgment was entered and sentences were imposed on all counts.

Defendant contends on appeal that section 8—5 of the Criminal Code of 1961 (the Code) (720 ILCS 5/8—5 (West 1996)) mandates the vacation of his convictions for the inchoate offenses of solicitation of murder where he also stands convicted of the principal offense of first-degree murder. The State concedes the point with respect to the solicitation of Dennis Fitts but argues that the remaining solicitation conviction involving Donald Thomas should stand because it was based on a separate act that did not culminate in the death of Riley.

Section 8—1.1(a) of the Code (720 ILCS 5/8—1.1(a) (West 1996)) specifies that one commits solicitation of murder "when, with the intent that the offense of first[-]degree murder be committed, he commands, encourages[,] or requests another to commit that offense." The evidence reveals two distinct acts of solicitation of murder: once when defendant asked cellmate Thomas to arrange for Riley's death and again when he communicated with Fitts at the jailhouse visitor's area. Section 8—5 of the Code specifies that no person shall be convicted of "both the inchoate and the principal offense." 720 ILCS 5/8—5 (West 1996). When a person solicits murder and his agent actually accomplishes that goal, courts have held that section 8—5 precludes that person from being convicted of both solicitation of murder and first-degree murder and mandates that the solicitation conviction and sentence be vacated. See *People v. Benkowski*, 215 Ill. App. 3d 615, 620, 575 N.E.2d 587, 590 (1991); *People v. Davidson*, 160 Ill. App. 3d 99, 117-18, 514 N.E.2d 17, 30 (1987). The solicitation-of-murder conviction based on defendant's request to Fitts therefore must be vacated, as defendant was found guilty of the principal offense of first-degree murder because he was accountable for the actions of Fitts.

Thomas stated that he refused defendant's request and indicated that he could not get anyone to kill Riley. The crime of solicitation was complete when defendant made the request. See *People v. Pagliuca*, 119 Ill. App. 3d 906, 910, 458 N.E.2d 908, 912 (1983). While the solicitation of Thomas did not directly result in Riley's death, there is no additional requirement under section 8—1.1(a) that the party being

solicited attempt to carry out the murder. See also W. LaFave & A. Scott, Criminal Law § 58, at 414 (1972). Stated differently, the inchoate offense of solicitation based on the separate and distinct act of requesting that Thomas kill Riley did not spawn the principal offense of first-degree murder, as was the case with Fitts, and must be allowed to stand.

For the foregoing reasons, we affirm defendant's convictions and sentences for first-degree murder, two counts of aggravated battery with a firearm, and one count of solicitation of murder based on defendant's solicitation of Thomas, and we vacate defendant's conviction and sentence for solicitation of murder based on his solicitation of Fitts.

Affirmed in part and vacated in part.

KUEHN and RARICK, JJ., concur.